GEORGE W. CASWELL *versus* JAMES M. CASWELL & *al.*

Although an administrator of an insolvent estate may be entitled in proper cases to the aid of this Court, as a court of equity, to obtain property conveyed by the intestate to defraud his creditors, for the purpose of appropriating the same to the payment of the debts against the estate, yet one creditor cannot maintain a process in equity for that purpose.

The plaintiff in equity must do all which the law will enable him to do, to obtain the object of his pursuit; and until he has exhausted his legal remedies, he is not entitled to the aid of a court of equity.

When it is attempted to reach the avails of property fraudulently conveyed, by a process in equity, it should appear that a judgment has been obtained of some description, which cannot be impeached by the party to be affected by the relief sought; and that every thing has been done therewith, which the law requires, to obtain satisfaction of the same.

It is generally true, that an erroneous judgment is to be avoided only by a writ of error; but this rule does not apply to cases where a party has a right to impeach a judgment illegally rendered, and yet has no right to reverse it by a writ of error.

In a suit in equity, for the purpose of avoiding a conveyance of land by the deceased debtor, it is competent for the grantee to impeach the judgment, which is the foundation of the suit, if such judgment be unlawfully obtained; and this may be done by plea and proof.

And if the debtor has deceased, and his estate has been rendered insolvent, and the claim founded upon the judgment, thus unlawfully obtained, has been laid before the commissioners of insolvency and has been allowed by them, and their report has been accepted in the probate court, this can have no greater validity, to the prejudice of a stranger, than the judgment. The grantee has the same right to impeach the one as the other, and in the same mode.

Where an action was intended to be carried by demurrer from the District Court to the S. J. Court, and for that purpose an erroneous judgment was entered for the plaintiff by consent, when on the pleadings, which by agreement might be waived, the defendant was entitled to judgment; and the appeal was entered in the S. J. Court, and the action continued, and then dismissed, because no legal recognizance had been taken, and thereupon judgment was rendered in the District Court in favor of the plaintiff, without any appearance there for the defendant, or any notice to him, or any change in the pleadings; *it was held,* that such judgment might be impeached by one injuriously affected thereby, and not a party or privy thereto.

BILL in equity by George W. Caswell against J. Madison Caswell, and Amasa Russell as Administrator of Job Caswell deceased. The case was heard upon bill, answer and proof.

Caswell *v.* Caswell.

To those who are conversant with equity proceedings, it may occasion no surprise, when it is stated, that in the present case, one copy of the abstract of the case covers three hundred and seventy-four closely written manuscript pages; and that the printed and written arguments of the highly respectable and learned counsel for the parties extended to two hundred and thirty-five pages more, about equally divided between them, enough in all to fill a volume. They cannot be so abridged as to bring them within the limits of publication.

*J. T. Mc Cobb,* for the plaintiff.

*H. C. Lowell,* for the defendants.

The opinion of the Court, WHITMAN C. J., SHEPLEY and TENNEY Justices, was drawn up by

TENNEY J. — The plaintiff presents himself in the bill, an alleged creditor of the estate of Job• Caswell, deceased, repre-- sented insolvent, his claim having been allowed by commissioners of insolvency.  He alleges, that the defendant, J. Madison Caswell, holds real estate, conveyed by the intestate to him, in fraud of the rights of creditors, and seeks discovery and relief in his bill, without a statement of the facts, a discovery of which is desired, and an averment, that they rest within the knowledge of the defendants alone, and are not susceptible of other proof, and that a discovery of them is material, to enable the plaintiff to obtain the relief sought; and prays the Court, acting under their equitable jurisdiction, as in cases of fraud and trust, to order the defendants to make true answers under oath, to the allegations in the bill, and that the defendant, J. Madison Caswell, be decreed to hold the real estate so conveyed, in trust for the benefit of the creditors of said estate, and that he make full and ample release of the same, to such persons as shall purchase it under a sale, by license of the court of probate, and that the administrator be ordered to take measures to sell the same, according to law. The defendants file their several answers, denying that the plaintiff can maintain this suit, because, if he is entitled to

impeach the conveyance as fraudulent, he has a plain and adequate remedy at law; and denying all fraud, touching the conveyance referred to in the bill, and denying also, that the claim of the plaintiff as a creditor, is valid against the title of J. Madison Caswell, in the lands.

The statute has provided that all the personal property, and real estate, of a deceased debtor, who died insolvent, is subject to the payment of the debts in the hands of his administrator, who is the representative of the intestate, and the trustee of the creditors. In the capacity of a trustee for the creditors, he is required to dispose of all the property of the intestate, and apply the avails in discharge of his indebtedness *pro rata*; one creditor has no preference over another, excepting in certain claims, which are to be fully paid. The power of the administrator under the statute, is ample, for the purpose of reducing all the means of the deceased debtor, to the condition, which will make them available for the object intended. The authority is not limited to the administration of the personal effects, and the real estate, of which the intestate died seized, but extends to that which was fraudulently conveyed by him, and of which he has been colorably disseized, with the intent to defraud creditors, giving him the power to make sale of the same, under a license from the court of probate. Rev. Stat. c. 112, sect. 31.

An administrator of an insolvent estate, as trustee of the creditors, is entitled in proper cases, to the aid of this Court, as a Court of Equity, to obtain property belonging to the intestate, which creditors may lawfully claim, to apply in satisfaction of their debts, where the same is held by others in fraud of their just rights. And the Court has the power, upon satisfactory evidence, that a conveyance was made by the intestate, for the fraudulent purpose of delaying or defeating creditors of the grantor, to pronounce the conveyance inoperative and void, and thereby enable the administrator more effectually to obtain means to be appropriated in discharge of the debts. *Holland* v. *Craft*, 20 Pick. 321.

If the administrator should faithfully perform all his duties

according to the law, and his authority thereby conferred, the object intended, would be fully attained. He has the power to accomplish substantially all which is sought by the present suit. The creditors are secured, as a part of his qualification, against negligence, and for the faithful discharge of his trust, by his oath, and his bond. If he should unreasonably refuse or neglect to administer the estate according to law, and his undertaking, on proof of such delinquency, to the judge of probate, the latter would be bound to remove him, and make an appointment of another, who might be a creditor; and if such should be appointed, he would be induced by his interest, as well as by his duty to do all, which would be for the benefit of those for whom he should act.

The Legislature, thus having provided a mode, by which insolvent estates may be settled, and all just claims against the same, paid to the full extent of the means, which can be applied for the purpose; and these provisions being intended to secure perfectly the whole object, and to afford all the relief, which can be demanded in any form and of any tribunal, creditors cannot be allowed to assume, that the mode so provided, is unsatisfactory, and can therefore be disregarded, and resort be made to a court of equity, for relief, by proceedings not contemplated by the statute.

It would be certainly very embarrassing to administrators, and a great impediment to the speedy settlement of estates, if such a course should be encouraged, or permitted, when administrators are conducting with fidelity and promptness; much more so, if one creditor alone, of others, whose claims have been allowed by commissioners, should be allowed to institute a suit in equity, to secure results which may be more readily brought about, by following the provisions of the statute. According to the answer of the administrator, in this case, he has administered all the estate of the intestate, which has come to his hands. He was applied to, in behalf of this plaintiff, to obtain license from the probate court, to make sale of the estate, alleged in the bill to have been fraudulently conveyed. The judge of probate, upon being consulted, expressed doubts

of the propriety of such proceedings, and no steps were afterwards taken for such purpose, but the administrator states in his answer, that he has at all times been ready, and is now willing to take such measures in reference to such real estate, and any and all property belonging at any time, to said intestate, as the law regulating the settlement of estates requires ; or that the decree of the judge of probate may render proper to be adopted and pursued. The statements in the answer are not attempted to be disproved.

The plaintiff must do all, which the law will enable him to do, to obtain the object of his pursuit, and until he has exhausted his legal remedies, he is not entitled to the aid of a court of equity. We are not satisfied that under the statements and averments in the bill, the answers and the proofs, that it is a case, which comes within their equity jurisdiction, even if the claim allowed by the commissioners, were not liable to impeachment by the defendants. But if it were otherwise, is is manifest that no decree could be framed, by the authority of which a final disposition of the suit, or a full settlement of the estate could be made.

But when it is attempted to reach the avails of property fraudulently conveyed, by a process in equity, it should appear that a judgment has been obtained of some description, which cannot be impeached by the party to be affected by the relief sought ; and that every thing has been done therewith, which the law requires to obtain satisfaction of the same. A judgment of a court of common law, would not be required, however, to lay the foundation for such a process, by the administrator for the benefit of the creditors of an insolvent estate. It is sufficient if the property sought to be recovered, would be applicable by law to the payment of the debts. The commission of insolvency, the report thereon allowing certain claims, and the acceptance thereof, without appeal, are judicial proceedings, in the nature of a judgment. The order of distribution on such report and acceptance, has the character of an execution, and is binding upon the property liable for the debts allowed, and for the benefit of the creditors.

In a suit in equity for the purpose of avoiding a conveyance of property by the deceased debtor, it is competent for the grantee in such conveyance to impeach the judgment, which is the foundation of the suit, if unlawfully obtained; and this may be done by plea and proof. It is generally true, that an erroneous judgment is to be avoided only by a writ of error; but this rule does not apply to cases where a party has a right to impeach a judgment illegally rendered, and yet has no right to reverse it by a writ of error. If a debtor suffers judgment to be rendered against him by collusion, for the purpose of having his property taken by virtue thereof, to the delay of creditors, a creditor may avoid the effect of the judgment by proof of the collusion. And if the judgment is wrongfully obtained by fraud between the parties, for the purpose of defeating the title of a third party, the latter may plead the matter, in avoidance of the judgment. *Fermor's case*, 3 Co. 77 ; *Pierce v. Jackson*, 6 Mass. R. 244. If the judgment has not been obtained by collusion with the debtor, or with any fraudulent design, yet, if it was unlawfully recovered, to the injury of a third person, who cannot reverse it for error, not being a party thereto, he can avoid it in the same manner. *Downs v. Fuller*, 2 Metc. 135.

The allowance of a claim by the commissioners of insolvency, and the report thereon, and the order of distribution, can have no greater validity to the prejudice of a stranger, than the judgment of another court; he has an equal right to impeach these proceedings by the same kind of evidence and in the same mode.

The basis of the plaintiff's claim is alleged to be a judgment obtained in the county of Kennebec, by the consideration of the District Court, held on the first Tuesday of April, 1842, against Elbridge G. Caswell and Job Caswell. The execution purporting to have issued upon that judgment, was the evidence presented to the commissioners in support of the claim which was thereupon allowed and reported, and an order of distribution made. J. Madison Caswell, was not a party to the judgment in the District Court, nor in any way privy to its ren-

dition. He has instituted no claim by virtue of it, and he does not stand in the place of either party thereto. The same remark may be made in reference to his connection with the claim of the plaintiff, presented to the commissioners, and the consequent proceedings thereon, in probate. If the judgment can be successfully impeached by him, so that it cannot be valid against his rights, the allowance of the claim of the plaintiff, having no other basis than this judgment, will be also impeached.

The suit in the District Court, which resulted in that judgment, was *assumpsit* in favor of the plaintiff, against Elbridge G. Caswell and Job Caswell; the liability of the defendants was denied; they pleaded *non assumpsit,* and the action proceeded to trial; witnesses were introduced and examined on both sides; without a verdict, by the agreement of the parties to that suit, a demurrer was filed to the plea of *non assumpsit,* by the plaintiff, which was joined, and the plea was to be adjudged bad, both parties having the right to waive their pleadings, in this Court, and plead anew. Ten days were allowed after the final adjournment of the Court, to the defendants in which to furnish sureties for the prosecution of the appeal taken, and a justice of the peace, who was the clerk of the Court, appointed to take the recognizance. Within the time prescribed, Job Caswell and another person presented themselves as sureties, who were received as such, and their names entered upon the docket under the action, and the recognizance made by the person appointed; but it has not been found upon the files by the clerk, and there is not satisfactory evidence, that it ever was filed in the case. The action was entered at the term of this Court, in the county of Kennebec, to which the appeal was attempted to be taken. The counsel previously engaged in the suit, for the plaintiff, entered a general appearance for him, and the action was continued to the next term of the Court, which was held on the first Tuesday of October, 1842. In the vacation, Job Caswell, one of the defendants, died, and E. G. Caswell, the other defendant, obtained his certificate of discharge in bankruptcy, who for that

reason, and the death of Job Caswell, directed the counsel to appear no further in the action. At the Oct. Term, upon the motion of the plaintiff's counsel, it being distinctly stated by those who had before appeared for the defendants, that they answered no further in the suit, and no one appearing for the defence, the appeal was dismissed, upon the ground, that one of the defendants was taken as a surety in the recognizance, and that no recognizance had been filed with the clerk. Subsequent to the dismissal of the appeal, damages were made up and entered upon the docket of the District Court, as of the April Term. 1842, without the direction of the Court or notice to the surviving defendant in the suit, or to the administrator of the one who had died ; and on the 8th day of March, 1843, execution was issued.

The dismissal of the appeal was authorized and required by the law under the facts presented to the Court. The recognizance, if taken, was not shown ever to have been filed with the clerk. Rev. Stat. chap. of amendment, sect. 13. But it does not follow, therefore, that the plaintiff was entitled to treat the proceedings in the District Court, as having terminated in a valid judgment, upon which execution could issue, without direction of the Court, so as to have a binding effect, to the prejudice of persons not party or privy thereto. It is satisfactorily shown, that the parties to that suit, considered every thing done, necessary to withdraw the case from the District Court. It was the expectation of both, that a further trial was to be had in the appellate Court, as is manifest from the entry of a general appearance for the plaintiff, and a continuance of the action. This expectation is not shown to have been abandoned, till it was known that one of the defendants had become a certificated bankrupt, discharged his counsel, not wishing further to defend the suit, and the other defendant had died. The judgment, which lies at the foundation of the present claim was not obtained upon a verdict or default; there is nothing which shows, that the plaintiff, from the evidence adduced at the trial, was entitled to a verdict, but the claim of the plaintiff was resisted throughout by the defendants. The

judgment is as upon an issue of law, not relied upon, by the plaintiff, but made up by consent as matter of form, merely for the purpose of a more expeditious and economical mode of transferring the cause to another tribunal. Upon the issue, there was really no adjudication by the Court, but it was agreed, that the plea should be recorded bad, to give progress to the action. The plea was good and sufficient, and would have been so adjudged by the Court, if its attention had been called to it, as a question to be settled independent of the agreement of the parties; and a judgment for the defendants would thereupon have been entered. The issue was not intended to be presented to the Court, on the appeal, but the pleadings were to be waived and so far varied, that an issue of fact could be made for a trial by a jury. To the agreement, by which alone, this judgment was rendered, the defendant, J. Madison Caswell, was a stranger, and he cannot be bound thereby. If the judgment was not recovered by collusion of the parties for a fraudulent purpose, and there is plenary evidence, that it was not, it was a judgment illegal as it respects those, not party or privy to it, who may be injuriously affected thereby. Persons so affected have a right to avoid it. The claim presented to the commissioners had no other foundation than this judgment; and having no legal basis, it is not entitled to greater respect than the judgment itself.

*Bill dismissed with costs.*