(No. 7035.  February 2, 1943.)

FRED J. PILLINER, Appellant, v. REBECCA PILLINER, Respondent.

[133 Pac. (2d) 735.]

Ariel L. Crowley for appellant.

Eugene H. Anderson for respondent.

AILSHIE, J.—This is an appeal from a judgment of nonsuit and an order requiring plaintiff to pay defendant maintenance. For convenience, we will hereafter refer to the appellant as plaintiff and respondent as defendant.

The action was instituted by plaintiff, praying for a decree of divorce on the grounds of the infliction of grievous mental suffering. Defendant answered, denying the allegations of the complaint and charging plaintiff with wilful desertion and praying for a decree, requiring plaintiff to pay a specified sum for her maintenance while plaintiff lives separate and apart from her.

The evidence on behalf of the plaintiff was introduced and proved to be very meager, desultory, and inconsequential. Upon motion of defendant's counsel, the court granted a nonsuit and, thereupon, proceeded with the trial of defendant's cross-complaint, charging desertion and praying separate maintenance. At the conclusion of the trial, the court made findings, conclusions of law, and judgment in favor of defendant and against the plaintiff. Appeal was taken by plaintiff "from the judgment of nonsuit and the decree for separate maintenance."

The material and essential findings made by the court are comprised in Paragraphs III, IV, and V, and are as follows:

"III.

"That the plaintiff wilfully deserted, separated from, and ceased to live with the defendant on or about the 3rd day of April, 1940, and that plaintiff and defendant have ever since lived separately and have not since lived nor cohabited together as husband and wife.

"IV.

"That during their said marriage and prior to their

said separation the plaintiff treated the defendant in a cruel and inhuman manner and repeatedly committed acts of cruelty of and toward the defendant, and that the plaintiff for long periods of time prior to a separation from the defendant, was sullen, morose, fretful, petulant of manner and abusive of and toward the defendant and uniformly and continuously discourteous of and toward the defendant and that during the period of more than a year preceding the time of their said separation the plaintiff for long periods of time, and for days at a time, in and about the home where plaintiff and defendant lived, refused to speak to the defendant at all or to recognize her as being present, and was domineering in his conduct and attitude toward the defendant, and during their said marriage refused to furnish sufficient clothing for the defendant to properly clothe her body.

"V.

"That the defendant is a woman of fine sensibilities, and that the said course of conduct of the plaintiff of and toward the defendant was intended and calculated by him to irritate and humiliate her and to produce in her high nervous distraction and that the said cruel conduct, and treatment of the plaintiff of and toward the defendant did cause her to become highly nervous and did produce in her high nervous distraction, and did humiliate her, and did cause her great mental anguish and grievous mental suffering."

The first contention made on this appeal is, that the motion for nonsuit was insufficient in its specifications and not adequate to properly present to the court any ground on which to grant the motion. Defendant's motion was as follows:

"I move that judgment of nonsuit be entered on the plaintiff's complaint, in favor of the defendant and against the plaintiff, on the ground that no ground for divorce has been proven, and on the ground that there has been no corroboration of the statements of the plaintiff with respect to his testimony purporting to be grounds for divorce."

It is the established rule in this court, that a motion for nonsuit, on insufficiency of the evidence to support a judgment, must specify wherein the evidence is insufficient and call the court's attention to the specific

insufficiency relied upon. (*Idaho Mercantile Co. v. Kalanquin,* 7 Ida. 295, 298, 62 Pac. 925; *Merrill v. Fremont Abstract Co.,* 39 Ida. 238, 227 Pac. 34; *Mole v. Payne,* 39 Ida. 247, 253, 227 Pac. 23; *Schleiff v. McDonald,* 37 Ida. 423, 216 Pac. 1044; *Carver v. Ketchum,* 53 Ida. 595, 26 Pac. (2d) 139.)

The purpose of this rule is to require the moving party to apprise the court and opposing counsel of the defect relied upon. Where, as in this case, the motion is based upon the insufficiency of evidence to establish any ground for divorce, and also insufficiency to constitute any corroboration, we think the motion is sufficiently definite to meet the requirements of the rule. Apparently, neither counsel nor the trial court was deceived or misled.

In this case relief was sought on a single ground, namely, the infliction of "grievous mental suffering"; and we do not think the rule requires, in such a case, the moving party to enumerate the facts that he contends should have been proven; especially, where he claims that no facts have been proven to make a case. Had defendant relied on failure to prove jurisdiction, residence, or simply lack of corroboration, the rule contended for by appellant might apply. Such was not the case here.

On the merits, it is contended by appellant, that sufficient evidence was introduced to constitute a *prima facie* case; and that the motion should have been overruled on that ground.

Under our statute, the subject of divorce has been committed to the District Courts and is tried as an equity case (*Sauvageau v. Sauvageau,* 59 Ida. 190, 81 P. (2d) 731); and the court is prohibited granting a divorce upon default, or "upon the uncorroborated statement, admission or testimony of the parties." (Sec. 31-703, I. C. A.) Consequently, the making of a *prima facie* case, as that term is ordinarily used in the law of evidence, is not sufficient to justify or support a decree of divorce.

When these people were married, April 12, 1937, plaintiff was then 72 years old and defendant 57. Plaintiff had been married and his wife had been dead for several years. Defendant had also been married and had reared three children, two boys and a girl, all of whom were married and had families of their own. Her husband had been dead for a number of years. Plaintiff was a jeweler and defendant operated a small dairy.

■ We are unable to find *any evidence* in the record that would justify a decree of divorce in favor of plaintiff. While plaintiff testifies to several dissociated occurrences, annoyances, and differences of opinion and preferences, after all, they are petty and too trivial to wreck the relation of husband and wife. Plaintiff admits they "didn't quarrel"; and the worst he testified to against her was that she would "go into such a temper she would call me a liar and even has threatened to strike me." It is not contended, however, that she ever struck plaintiff.

Plaintiff is quite deaf and of course did not hear all that was said when defendant's children and in-laws were there; and he evidently saw and heard them talking and drew the conclusion, that they were talking about him. Defendant seems to have a "temper" and plaintiff is partially deaf; result, misunderstandings and differences of opinion. Recital of the petty grievances disclosed by the record would be of no value whatever here.

Had defendant's children made fewer visits to the Pilliner home and made their visits shorter, this case would probably not be here. Defendant appears to have been thoughtful of and attentive to plaintiff when she had a chance to be so; but plaintiff, evidently thinking himself neglected among so many visitors, grew sullen, noncommunicative and, perhaps, unresponsive, all of which "got on the nerves" of each of them.

■ There is some difference or, at least, uncertainty, as to just how or why plaintiff came to withdraw from his home and take up his residence in the trailer close by the residence; but the fact remains that he did do so and continued to live separate and apart from his wife. It was his home; he was head of the family and had a right to reside there, if he desired to do so. After all, his leaving was of his own choosing. It was proper for the court, under these circumstances, to order the plaintiff to provide maintenance for the wife, while he leaves their bed and board thus. (*Simonton v. Simonton*, 33 Ida. 255, 262, 193 P. 386, 388; *Sauvageau v. Sauvageau*, 59 Ida. 190, 194, 81 P. (2d) 731; *Radermacher v. Radermacher*, 61 Ida. 261, 268, 100 P. (2d) 955; *Radermacher v. Sutphen*, 60 Ida. 529, 531, 92 P. (2d) 1070; *Stephens v. Stephens*, 53 Ida. 427, 436, 24 P. (2d) 52; *Benson v. District Court*, 57 Ida. 85, 92, 62 P. (2d) 108; *Vollmer v. Vollmer*, 47 Ida. 135, 147, 273 P. 1.)

The court found plaintiff guilty of desertion of his wife and ordered:

"That the plantiff pay to the defendant for her separate maintenance and support the sum of $65.00 per month on the first day of each month hereafter, and that the plaintiff have the alternative of providing and continuing to provide the defendant with the use of the residence property and home in which she now lives and resides, being the premises situate in Mountain Home, in the County of Elmore, State of Idaho, particularly described as follows, to-wit: Lots nine, ten, eleven and twelve in block five of College Addition to Mountain Home, and, the furniture, fixtures and other articles of household use and equipment situate at and in the said described residence property, and that the plaintiff be credited by providing said home, and the furniture, fixtures and other articles of household use and equipment situate therein, upon said monthly payments, the sum of $30.00 per month, leaving a balance of $35.00 per month to be paid by the plaintiff to the defendant so long as he shall provide her with the said home and residence and the furniture, fixtures and articles of household use and equipment situate in such home, the plaintiff also to keep such home and residence in repair and to pay the taxes thereon, and that the plaintiff shall be entitled to continue to live in the trailer-house situate at said described home and place of residence and to use the bathroom facilities in said residence house in common with the defendant."

We are not prepared to say the amount of this allowance is excessive. It must be borne in mind that these orders for separate maintenance, where divorce is not granted, *are not final* and remain subject to modification on showing changed conditions. (*Sauvageau v. Sauvageau,* 59 Ida. 190, 195, 81 P. (2d) 731; *Radermacher v. Radermacher,* 61 Ida. 261, 279, 100 P. (2d) 955.) The law looks with favor on reconciliation in cases of this kind and we are inclined to the notion, that if defendant's children and in-laws will stay away and let them alone, they may very well become reconciled and live comfortably and contentedly together the remainder of their days. They both seem to be intelligent, industrious, and very reputable citizens of their community; and a little forbearance and consideration, on the part of each, might solve their problem. They are old enough and sane enough to do so. (*Spofford v. Spofford,*

18 Ida. 115, 121, 108 P. 1054; see 34 L. R. A., N. S., note pp. 361, 362.)

The judgment is affirmed and the order for separate maintenance is affirmed, subject to the power of the trial court to change or modify it if conditions seem to warrant or require such action. No costs awarded.

Budge and Dunlap, JJ., concur.

Holden, C.J., and Givens, J., dissent.